**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)**

**INFINITY CONSULTING GROUP, LLC
d/b/a GLITZ AND GLAM JEWELRY BY
LJ and other similarly situated
938 E. Swan Creek Road, Suite 176
Fort Washington, MD 20744**

**and**

**ALVIN VAUGHN and others similarly
situated
10832 Margate Road
Silver Spring, MD 20901**

*Plaintiffs,*

     **v.**

**THE UNITED STATES OF AMERICA**

    <u>SERVE ON</u>:
    William P. Barr, Esq.
    Attorney General of the United States
    United States Department of Justice
    950 Pennsylvania Ave NW
    Washington, DC 20530-0001

**and**

**THE UNITED STATES
SMALL BUSINESS ADMINISTRATION**

    <u>SERVE ON</u>:
    Chris Pilkerton, Esq.
    Office of General Counsel
    409 3rd Street SW
    Washington, DC 201416

**and**

**CIVIL ACTION**

**NO.**_____

**JURY TRIAL DEMANDED**

**JOVITA CARRANZA,**
**in her Official Capacity as**
**Administrator of the Small Business**
**Administration**

    <u>SERVE ON</u>:
    Office of General Counsel
    409 3rd Street SW
    Washington, DC 201416

**and**

**STEVEN MNUCHIN,**
**in his Official Capacity as**
**United States Secretary of the Treasury**

    <u>SERVE ON</u>:
    United States Department of the Treasury
    Office of General Counsel
    1500 Pennsylvania Ave NW
    Washington, DC 20220

    ***Defendants.***

## CLASS ACTION COMPLAINT

Amid our country's handling of the novel coronavirus pandemic, the United States government enacted an extraordinary piece of legislation attempting to inject trillions of dollars into our economy. As part of this legislation, the Small Business Administration, in conjunction with the Department of Treasury, doled out nearly $350 billion to "small" businesses (ones with less than 500 employees). However, our government left many small businesses in the lurch.

A vast majority of minority-owned and woman-owned businesses were entirely shut out of this program by the actions taken by the government. While many larger businesses were able to rush to their banks to avail themselves of the opportunity to participate, **most of the minority-owned and woman-owned small businesses were never even given the opportunity to submit an application for the program before the money ran out**. Moreover, to the extent these

2

minority-owned and woman-owned businesses were even able to participate, many of them would receive far less benefit from the program than other businesses. This is a direct result of the government's discriminatory actions.

Plaintiffs, Infinity Consulting Group, LLC d/b/a Glitz and Glam Jewelry by LJ ("Plaintiff Infinity") and Alvin Vaughn ("Plaintiff Vaughn"), bring this lawsuit on behalf of themselves and others similarly situated against the U.S. Small Business Administration ("Defendant SBA"), Jovita Carranza ("Defendant Carranza") in her official capacity as Administrator of Defendant SBA, the United States of America (the "USA"), and Steven Mnuchin ("Defendant Mnuchin") in his official capacity as Secretary of the Treasury (collectively, the "Defendants") seeking all available relief under the equal protection of the Fifth Amendment, and state as follows:

I.    **INTRODUCTION**

1.    On March 27, 2020, President Donald J. Trump signed the Coronavirus Aid, Relief, and Economic Security Act, H.R. 748 ("CARES Act") into law. This legislation created a new Paycheck Protection Program ("PPP") to permit COVID-19-impacted small businesses (under 500 employees), nonprofits, and individuals to obtain loans via the 7(a) Loan Program ("PPP Loans"). The CARES Act temporarily (from February 15, 2020 through June 30, 2020) increased the total 7(a) Loan Program amount to $349 billion.

2.    During a time of national and global crisis, Defendants were given the unique and tremendous charge of providing relief to small business owners through administration of these small business loans pursuant to the PPP. Yet, Defendants chose to pick winners and losers - the winners being non-minority and non-woman owned small businesses.

3.     Defendants failed to appropriately protect the interests of a large part of this country's economic engine - sole proprietorships,[1] self-employed individuals, or independent contractors ("Nonemployer Businesses") - by giving preference to businesses who maintained W-2 employees on payroll.  In fact, Defendants knowingly, intentionally, and illegally discriminated against minority-owned and woman-owned Nonemployer Businesses.

4.     Defendants exacted this scheme by preventing Nonemployer Businesses, which are disproportionately owned by minorities and women, from submitting applications and failing to provide guidance to allow for the processing of loans for Nonemployer Businesses.   By the time the Defendants allowed these Nonemployer Businesses to submit applications, the money was gone -- nearly $350 billion.

II.    **PARTIES**

5.     Plaintiff Infinity Consulting Group, LLC d/b/a Glitz and Glam Jewelry by LJ is a pass-through entity organized in May 2014 under the laws of the state of Maryland. It is owned and operated by Ms. LeTresa Williams who is an individual residing in Accokeek, Maryland. This entity is solely minority owned and operated.

6.     Plaintiff Alvin Vaughn is an individual who owns and operates a financial services company as a sole proprietorship. He is an African American man who currently resides in Silver Spring, Maryland.

7.     Defendant Jovita Carranza is the current administrator of the United States Small Business Administration and has been in this position throughout the entirety of the relevant time period.

---

[1] A limited liability company (or LLC) that does not make a simple S-Corp election is treated, for tax purposes, as a sole proprietor.

8.      Defendant SBA is a government department organized under the laws of the United States of America whose purpose is to provide service and support to small businesses in the United States. Per its website, Defendant SBA "has worked to ignite change and spark action so small businesses can confidently start, grow, expand, or recover."

9.      Defendant Mnuchin is the Secretary of the Treasury and has been in this position throughout the entirety of the relevant time period.

**III.    JURISDICTION AND VENUE**

10.     The subject matter jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 as this is a civil action arising under the Constitution and laws of the United States; specifically, these claims arise pursuant to 42 U.S.C. § 1983.

11.     Venue lies in this District pursuant to 28 U.S.C. § 1391(e) as this is a judicial district in which the Plaintiffs reside.

**IV.    FACTS**

**A.      Facts Common to All**

12.     The CARES Act is the largest economic relief bill in United States history. As enacted, the CARES Act allocates $2.2 trillion to support individuals and businesses that are affected by the COVID-19 pandemic wreaking havoc on the global economy.

13.     The CARES Act expanded the eligibility criteria for borrowers to qualify for SBA loans through the institution of the PPP. The PPP was purportedly made available to small businesses with payroll employees, eligible non-profit organizations, veterans' organizations, and tribal businesses per the Small Business Act.

14.     The PPP was also intended to be made available to self-employed individuals, sole proprietors, and independent contractors.

15.     The CARES Act does not specify as to when and how the PPP funds would be distributed, nor does it provide enough guidance or criteria as to how recipients of PPP funds would be determined. This was left to the discretion of Defendants and their employees and officers.

16.     Defendants were tasked with the implementation of the PPP and were also responsible for issuing guidance to assist potential borrowers in successfully completing and submitting loan applications.

17.     Defendants were also in charge of deciding when the application process would open, and to whom it would be available. Pursuant to this, Defendants scheduled two separate application periods for the PPP loans.

18.     The first application period began on Friday, April 3, 2020. This application period was specifically designated for businesses with up to 500 W-2 employees.

19.     The second application period began one week later, Friday, April 10, 2020. This application period was designated for Nonemployer Businesses. These individuals and entities were prevented from submitting PPP loan applications or otherwise accessing the allocated funds before Friday, April 10, 2020.  In addition, the guidance for these loan applications was not released until late in the day on Tuesday, April 14, 2020 -- practically not allowing the Nonemployer Businesses to apply until Wednesday, April 15, 2020.[2]

20.     Defendants did not provide any explanation or policy reasoning to justify the separate application periods.

21.     On or about April 16, 2020, Defendant SBA announced on its website that it is "unable to accept new applications for the Paycheck Protection Program based on available

---

[2] https://home.treasury.gov/system/files/136/Interim-Final-Rule-Additional-Eligibility-Criteria-and-Requirements-for-Certain-Pledges-of-Loans.pdf

appropriations funding. Similarly, we are unable to enroll new PPP lenders at this time."[3] The general consensus on this announcement is that the PPP funds had been exhausted, and there was no more money available to fund PPP loans for any individual or entity.

22. The first wave of applicants, businesses with payroll employees, were given a 14-day window of opportunity to apply for the PPP loans before the funds were exhausted. In contrast, the second group, Nonemployer Businesses, only had a one-day window to apply before the funds were exhausted.

23. Defendants knew that discriminating against Nonemployer Businesses would disproportionately harm businesses owned by minorities and women.[4]

24. 9.9 million firms in the United States were owned by women, with 89.5% of those being Nonemployer Firms.[5]

25. Approximately 79% of all white-owned businesses and 96% of black-owned businesses are nonemployer, respectively. "Nonemployer businesses...play a larger role amongst black-owned businesses than they do amongst white-owned businesses.[6]

26. It has been widely reported by many congressional leaders that this very discrimination has occurred in the implementation of the PPP.

---

[3] https://www.sba.gov/page/coronavirus-covid-19-small-business-guidance-loan-resources (accessed as of 4/16/2020)

[4] https://www.sba.gov/sites/default/files/advocacy/Nonemployer-Fact-Sheet.pdf;
https://www.mbda.gov/sites/mbda.gov/files/migrated/files-attachments/SBO_Facts_BOB.pdf;
https://www.mbda.gov/sites/mbda.gov/files/migrated/files-attachments/Black%20Women%20Entrepreneurs.pdf

[5] https://www.census.gov/newsroom/press-releases/2015/cb15-209.html

[6] M'Balou Camara, Khaing Zaw, Darrick Hamilton, and William Darity Jr., *Entering Entrepreneurship: Racial Disparities in the Pathways into Business Ownership,* October 2019 (https://socialequity.duke.edu/wp-content/uploads/2019/10/Entering-Entrepreneurship.pdf); citing US Census 2012 Survey of Business Owners (https://www.census.gov/library/publications/2012/econ/2012-sbo.html)

**B.     Facts Specific to Plaintiff Infinity Consulting Group, LLC. d/b/a Glitz and Glam Jewelry by LJ**

27.     Plaintiff Infinity Consulting Group, LLC d/b/a Glitz and Glam Jewelry by LJ ("Plaintiff Glitz" or "the business") is a limited liability company, which has not elected S-Corp status, organized in May 2014 under the laws of the state of Maryland. Plaintiff Glitz is owned and operated by Ms. LeTresa Williams ("Ms. Williams") who is an individual residing in Accokeek, Maryland.

28.     Ms. Williams has filed her income tax returns using IRS Form 1040, Schedule C, Profit or Loss From Business (Schedule C) for tax years 2014 through the present. The amounts documented in her Schedule C represent the income generated by Plaintiff Glitz's for any given taxable year.

29.     Plaintiff Glitz is a retail jewelry business that generates income through online sales, trade shows, and vending at various conferences. The majority of Plaintiff Glitz's revenue is generated through in-person sales at trade shows and conferences.

30.     Plaintiff Glitz's business model is seasonal, as most of the conferences and trade shows in which the business participates are held in the spring and summer months. Plaintiff Glitz also generates a considerable amount of its revenue producing custom jewelry for weddings and other events.

31.     All of the conferences and trade shows which Plaintiff Glitz planned to attend have either been cancelled or indefinitely postponed due to the COVID-19 pandemic and social distancing policies enacted by state and local governments. Plaintiff Glitz's only current source of revenue is its online sales, which are negligible.

32.     Plaintiff Glitz applied for a PPP loan through Bank of America on April 10, 2020. Plaintiff Glitz had and continues to have an ongoing banking relationship with Bank of America. Plaintiff Glitz applied for the relief funds under Bank of America's PPP application process.

33.     At the time Plaintiff Glitz applied, the PPP application required the applicant to upload its payroll records.  Plaintiff Glitz does not have any employees, and thus there were no payroll records to submit.  Plaintiff Glitz completed the application without submitting any payroll records.  On April 10, 2020, Plaintiff Glitz received acknowledgement that its application had been received.

34.     On April 13, 2020, Plaintiff Glitz received additional correspondence from Bank of America requiring that the business provide its payroll records.  On April 16, Plaintiff Glitz uploaded its 2019 Schedule C (Profit or Loss from Business) as documentation. Plaintiff Glitz was then provided with a loan number. However, it never received any funds or any indication as to how and when funds would be issued.

35.     On April 16, 2020, Plaintiff Glitz tried to apply for the PPP loan as a self-employed sole proprietorship as Ms. Williams was unsure that she had properly completed the first application as an LLC.  However, Bank of America did not offer a specific application for Nonemployer Business applicants. The only application available was the one that Plaintiff Glitz had already completed and submitted on April 10, 2020.

36.     As of the date of the filing of this Complaint, Plaintiff Glitz has not received any notice of acceptance of the loan application, approval, and/or disbursement through the PPP.

**C.     Facts Specific to Plaintiff Alvin Vaughn**

37.     Plaintiff Alvin Vaughn ("Plaintiff Vaughn") is an individual currently residing in Silver Spring, Maryland.

38.     Since 2015, Plaintiff Vaughn has owned and operated an insurance and financial services business as a sole proprietorship. Plaintiff Vaughn's business includes insurance, pension, and retirement policy sales, as well as financial planning advice for individuals and businesses. Plaintiff Vaughn operates his business out of his home in Silver Spring, Maryland.

39.     Plaintiff Vaughn has filed his income tax returns using IRS Form 1040, Schedule C, Profit or Loss From Business (Schedule C) for tax year 2018.  The amounts documented in his Schedule C represents the income generated by his insurance and financial services business for that year.

40.     Plaintiff Vaughn's business requires regular face-to-face meetings with both current and potential clients. Plaintiff Vaughn is often required to travel to clients' homes or businesses to meet with them. Plaintiff Vaughn also regularly attends seminars, networking events, and marketing events in order to sustain and build his business, as well as to meet potential clients.

41.     Since the COVID-19 pandemic has escalated in the MD/DC/VA region, Plaintiff Vaughn has experienced a substantial decrease in business revenue such that he has reported no income for Quarter 1 of 2020.

42.     This decline is directly attributable to COVID-19 pandemic and social distancing policies enacted by state and local governments. Plaintiff Vaughn is no longer able to meet with clients in person, and most of his business cannot be effectively conducted over the phone or via videoconferencing. Plaintiff Vaughn cannot bring in new clients, nor can he generate income through existing ones. Most of Plaintiff Vaughn's clients are not in a position to afford to pay his fees under the current economic conditions.

43.     Plaintiff Vaughn learned of the PPP loan program in early April 2020. He contacted his lender, CapitalOne Bank prior to the April 10, 2020 application date and requested information

on how to apply. Plaintiff Vaughn was informed by CapitalOne that they were unable to process any PPP loan applications because they did not have sufficient guidance from Defendant SBA on how to properly administer the funds and approve the applications. Plaintiff Vaughn was not able to locate an alternate lender before the PPP ran out of funds.

44.     Plaintiff Vaughn was not even able to submit an application before he learned that the PPP funds were no longer available.  If Plaintiff Vaughn were able to submit an application, he would not be permitted, under Defendants' guidance, to include any retirement contributions or health insurance costs in his requested amount, which would have been allowed if he had payroll.  Notably, during 2019, Plaintiff contributed to his Solo 401(k) plan, which he would have been able to include in his loan amount and forgiveness amount if he had been a partnership, C Corp or elected S Corp status.

45.     As of the date of the filing of this Complaint, Plaintiff Vaughn has not received any funding through the PPP.

## V.    CLASS ALLEGATIONS

46.     Plaintiffs bring this claim for violations of Plaintiff's rights to equal protection under the Fifth Amendment to the United States Constitution pursuant to Federal Rule of Civil Procedure 23 on behalf of: **All minority and woman-owned Nonemployer Businesses**.

47.     Upon information and belief, there are millions of minority and woman-owned, Nonemployer Businesses that have suffered discrimination based on the guidelines set forth by the SBA prohibiting such business from applying for the PPP program contemporaneously with their employer counterparts.

48.     Plaintiffs are class members, and their legal claim is typical of the claims of other class members.  Plaintiffs have no interests that are antagonistic to or in conflict with the interests of other class members.

49.     Plaintiffs will fairly and adequately represent the class and their interests, and they have retained competent and experienced counsel who will effectively represent the interests of the entire class.

50.     Questions of law and fact are common to the class and include whether the SBA's guidelines had a disparate impact on minority and women-owned small businesses.

51.     Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over any questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  The damages suffered by individual class members are small compared to the expense and burden of individual prosecution of this litigation.  In addition, class certification is superior because, *inter alia*, it will obviate the need for unduly duplicative litigation, which might result in inconsistent judgments about Defendants' guidelines and actions.

52.     Members of the proposed class are readily ascertainable, as the United States government and its agencies regularly collect and maintain information regarding minority-owned and woman-owned Nonemployer Businesses.

53.     This action satisfies the numerosity, typicality, adequacy, predominance and/or superiority requirements under applicable law.

54.     Eight million firms in the United States were owned by minorities in 2012, with 88.6% of those being Nonemployer Businesses.  9.9 million firms in the United States were owned

by women, with 89.5% of those being Nonemployer Businesses.  As a result, the class is so numerous that joining all members in a single action is impracticable.  The disposition of these claims will provide substantial benefit to the class.

55.     *Commonality/Predominance*. There is a well-defined community of interest and common questions of law and fact, which predominate over any questions affecting only individual members of the class. Plaintiffs' claims are about the SBA's discrimination against minority-owned and woman-owned Nonemployer Businesses through its guidelines issue to govern the PPP loan program.  Common legal and factual questions, which do not vary among members of the class, and which may be determined without reference to the individual circumstances of class members, include, but are not limited to:

a.      Whether Defendants' actions in prohibiting sole proprietors, self employed, and independent contractors from applying with the other small businesses with less than 500 employees was discriminatory against minority-owned and woman-owned Nonemployer Businesses?

b.      Whether Defendants' actions in prohibiting sole proprietors, self employed, and independent contractors from including expenses such as retirement, health insurance, and other expenses in calculating the total loan amount was discriminatory against minority-owned and woman-owned Nonemployer Businesses?

c.      Whether Defendants' actions in reducing the forgivable portion of the loan only for sole proprietors, self employed, and independent contractors to eight weeks of net profits based on the fact that the SBA believes "many such individuals operate out of either their homes, vehicles, or ***sheds*** and

thus do not incur qualifying mortgage interest, rent, or utility payments"[7] was discriminatory against minority-owned and woman-owned Nonemployer Businesses? (emphasis added).

56.     *Typicality.* The representative Plaintiffs' claims are typical of the claims of the class.  The Plaintiffs are each minority owned Nonemployer Businesses.  Plaintiff Infinity is also a woman-owned Nonemployer Business.  The only difference among class members will be the amount of damages sustained by the members of the class, which does not affect liability and does not bar certification.

57.     *Adequacy of Representation.* Plaintiffs will fairly and adequately protect and pursue the interests of the members of the class.  Plaintiffs understand the nature of the claims herein, and their role in these proceedings.  They will vigorously represent the interest of the class.   Plaintiffs have retained class counsel who are experienced and qualified in employment and complex cases. Neither Plaintiffs nor their attorneys have interests which are contrary to or conflict with those of the class.

58.     *Superiority/Manageability*.  A class action is superior to all other available methods for the fair and efficient adjudication of this action.  There are millions of minority-owned and women-owned Nonemployer Businesses subject to the Defendants' discriminatory practices and guidance.  Individual litigation of the claims of class members is economically unfeasible and procedurally impracticable.   The individual damages incurred by each member of any class resulting from Defendants' common and systemic wrongful conduct likely will be too small to warrant the expense of individual suits.  Further, the Court would be unduly burdened by individual litigation of cases raising the same common questions.  Individualized litigation would

---

[7] https://home.treasury.gov/system/files/136/Interim-Final-Rule-Additional-Eligibility-Criteria-and-Requirements-for-Certain-Pledges-of-Loans.pdf

also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the Court resulting from multiple trials of the same factual and legal issues.

<u>**COUNT I**</u>
**VIOLATION OF THE FIFTH AMENDMENT TO THE U.S. CONSTITUTION**
**EQUAL PROTECTION**

59.     Paragraphs 1 to 58 are incorporated as though fully set forth herein.

60.     Plaintiffs and class members are individuals entitled to protection under the U.S. Constitution.

61.     The guidance provided by Defendants for implementation of the CARES Act violated and was contrary to the Fifth Amendment of the U.S. Constitution because it discriminated against Nonemployer Businesses based on race and gender.

62.     The SBA's guidance blocked minority-owned and woman-owned Nonemployer Businesses from having a fair chance to apply, and in some cases out right prohibited application, for the PPP loan under the CARES Act, while it allowed larger, non-minority and non-woman owned small businesses to apply and receive funding.

63.     As mentioned previously, 8 million firms in the United States were owned by minorities in 2012, with 88.6% of those being Nonemployer Businesses.  9.9 million firms in the United States were owned by women, with 89.5% of those being Nonemployer Businesses.

64.     The SBA knew full well the discriminatory impact the guidance would have on those minority and woman-owned Nonemployer Businesses, which was a motivating factor for setting forth the guidance.

65.     As a direct and proximate result of the unconstitutional guidance, Plaintiffs have suffered and will continue to suffer irreparable injuries including but not limited to financial ruin,

business ruination, and the violation of the rights protected by the Fifth Amendment of the United States Constitution.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiff and the class seek the following relief:

a.        An order certifying the proposed class pursuant to Fed. R. Civ. P. 23; and

b.        Grant judgment against Defendants, jointly and severally, in favor of Plaintiffs and the class for all damages suffered by Plaintiffs and the class, including pre-judgment and post-judgment interest; and

b.        Litigation costs, expenses, and attorneys' fees to the fullest extent permitted under the law; and

c.        Such other and further relief as this Court deems just and proper.

Dated: April 17, 2020                          Respectfully submitted,


_____*/s/ Sean P. Hatley*_____
Glen E. Frost (Bar No. 29014)
Matthew P. Kraeuter (Bar No. 29252)
Sean P. Hatley (Bar No. 20139)
Elizabeth M. Burlington (Bar No. 10209)
FROST LAW
839 Bestgate Road, Suite 400
Annapolis, Maryland 21401
Phone: (410) 497-5947
Facsimile:      (888) 235-8405
Email:      glen.frost@frosttaxlaw.com
Email:      matt.kraeuter@frosttaxlaw.com
Email:      sean.hatley@frosttaxlaw.com
Email:      elizabeth.burlington@frosttaxlaw.com

*Counsel for Plaintiffs*


<u>**JURY TRIAL DEMANDED**</u>

Plaintiffs demand a jury trial as to all claims so triable.